IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CNSP, INC.,

    Plaintiff,

v.                                                                                                 Civ. No. 17-814 MV/KK

UNITED STATES FOREST
SERVICE; THOMAS TIDWELL;
JAMES MELONAS,

    Defendants.


## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on *Federal Defendants' Motion to Dismiss and Memorandum in Support* (Doc. 14), filed December 22, 2017. In this Motion, Defendants seek dismissal, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, of Plaintiff's *Complaint for Declaratory Judgment and Other Relief* (Doc. 1), filed August 9, 2017. Also before the Court are *Plaintiff's Response to Federal Defendants' Motion to Dismiss* (Doc. 17), filed January 11, 2018; and *Federal Defendants' Reply in Support of Motion to Dismiss* (Doc. 20), filed February 1, 2018. The undersigned,[1] having considered the parties' submissions, the record, and the relevant law, finds that Federal Defendants' Motion to Dismiss and Memorandum in Support is well taken, and recommends that it be **GRANTED**.

### I.     Background

Plaintiff CNSP, Inc. is a New Mexico Corporation and a State Regulated Competitive Local Exchange Carrier. (Doc. 1 at 3.) Defendant, the United States Forest Service is a federal

---

[1]Pursuant to an *Order of Reference Relating to Non-Prisoner Pro Se Cases* issued on January 30, 2018, by United States District Judge Martha Vazquez, the undersigned United States Magistrate Judge Kirtan Khalsa submits an analysis and recommended disposition of this Matter to United States District Judge Vazquez. (Doc. 30.)

1

agency within the United States Department of Agriculture charged with managing the National Forest System lands. (Doc. 1 at 2.) Defendant Thomas Tidwell, sued in his official capacity, is Chief of the United States Forest Service; and Defendant James Melonas, also sued in his official capacity, is the Santa Fe National Forest Supervisor. (Doc. 1 at 3.)

Tesuque Peak is a mountain in the Santa Fe National Forest. (Doc. 1-1 at 2.) Tesuque Radio Company (TRC) has telecommunications facilities on Tesuque Peak in an area called the "Tesuque Peak Communications Site." (Doc. 1 at 2; Doc. 1-1 at 2.) Plaintiff has telecommunications equipment on the Tesuque Peak Communications site pursuant to a lease agreement with TRC. (Doc. 1 at 2.) On June 15, 2017, after TRC increased its leasing fees, Plaintiff, through its president, Albert Catanach, requested authorization from the Forest Service to place new telecommunications facilities, including a 30 foot mini tower and telecommunications hut, on Tesuque Peak. (Doc. 1 at 2; Doc. 1-1 at 2.) In a July 7, 2017, letter signed by Forest Supervisor James Melonas, the Forest Service denied Plaintiff's request. (Doc. 1-1 at 2.)

In his July 7, 2017, letter, Mr. Melonas advised Mr. Catanach that Plaintiff's request was being denied "[b]ecause it does not meet requirements to maximize joint use of existing electronic site facilities and creation of a new communications site on the forest is not authorized in the current Forest Plan." (Doc. 1-1 at 2.) In substantive part, Mr. Melonas continued:

> Tesuque Radio Company (TRC) is the only facility owner/manager at the Tesuque Peak Communications Site authorized to lease to commercial entities such as your company. This right to own and manage the exclusive commercial facility on the mountain was competed for through a Prospectus process in 1984. TRC acquired the facilities and associated lease in 1991. The site management plan and TRC's lease require that the leaseholder co-locate and house other tenants within their authorized infrastructure. TRC's infrastructure would have to have reached full capacity before any new/additional infrastructure could be considered. These requirements are intended to prevent a proliferation of towers

2

and structures, thereby protecting natural resource values such as Visual Quality Objectives for the mountain and adjoining Wilderness Area.

New infrastructure would require formal establishment of a new communications site, situated some distance from the existing site to minimize interference, competition, and visual quality issues. Because a new site is not authorized in the current Forest Plan this would require new environmental analysis and a Forest Plan amendment to accomplish. The processing costs associated with this analysis are borne by the proponent. Just as TRC's predecessor did, interested parties would have to compete for the right to develop new/expanded facilities. The original proponent is not guaranteed to benefit from this competition.

Denial of unsolicited proposals is not subject to administrative appeal under 36 CFR part 215 or part 251, subpart C., and does not constitute a proposed action pursuant to 36 CFR 251.54(e)(6) and the National Environmental Policy Act (NEPA) of 1969 (42 U.S.C. 4321-4347).

(Doc. 1-1 at 2.)

Based on the Forest Service's denial of its request to place telecommunications facilities on Tesuque Peak, Plaintiff filed the present lawsuit. (Doc. 1.) Plaintiff raises three claims. In its "First Cause of Action" Plaintiff claims that by denying its request, Defendants violated 47 U.S.C. Section 253, a provision of the Telecommunications Act that bars states and localities from effectively prohibiting any entity from providing any interstate or intrastate telecommunications service. (Doc. 1 at 6-8.) In its "Second Cause of Action" Plaintiff claims in denying its request, Defendants violated 47 U.S.C. Section 332(c)(7)(B), a provision of the Telecommunications Act that bars state and local governments or instrumentalities thereof from unreasonably discriminating among providers of functionally equivalent services; and from prohibiting, or effectively prohibiting the provision of personal wireless services. (Doc. 1 at 8-11.) In its "Third Cause of Action" Plaintiff claims that in denying its request without first requiring Plaintiff to complete Standard Form 299 as part of Plaintiff's application, Defendants violated 47 U.S.C. Section 1455(b), a provision of the Spectrum Act pursuant to which federal agencies (such as the Forest Service) may grant an easement, right-of-way, or a lease to install,

construct, modify or maintain a communications facility installation, and requiring the agency to develop and use a standard form for applications therefor. (Doc. 1 at 11-13; see Doc. 20 at 12.)

Defendants argue that Plaintiff's claims should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff's First and Second Causes of Action do not arise under federal law, and because Plaintiff lacks standing to pursue its Third Cause of Action. (Doc. 14 at 11-16, 21-25) Defendants argue, in the alternative, that each of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Doc. 14 at 13-21.) Also in the alternative, Defendants argue that the procedures and remedies sought by Plaintiff—namely, a jury trial, compensatory damages, and an order enjoining Defendants from prohibiting its access to the Tesuque Peak Communications site and an order granting Plaintiff's request to construct a telecommunications facility on that site—are not available as a matter of law and, therefore, if Plaintiff's Causes of Action are not dismissed, the relief requested by Plaintiff should be denied. (Doc. 14 at 25-29.)

For the reasons that follow, I recommend that the Presiding Judge grant Defendants' Motion to Dismiss on the ground that the Court lacks subject-matter jurisdiction over Plaintiff's claims. Because I recommend that this matter be dismissed for lack of subject-matter jurisdiction, I do not address Defendant's alternative arguments.

## II. Discussion

### A. Law Governing Subject Matter Jurisdiction

It is the Plaintiff's burden to establish subject-matter jurisdiction. Fed. R. Civ. P. 8(a)(1); *Blume v. Los Angeles Superior Courts*, 731 F. App'x 829, 829 (10th Cir. 2018). Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to defend against any claim on the ground that the Court does not have subject-matter jurisdiction over a claim. "If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Issues relating to the Court's subject matter jurisdiction are of primary concern, and should be resolved before the Court considers the merits of a claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (emphasizing that the Court cannot proceed at all in any cause without jurisdiction, which issue must be settled before the merits of an action are addressed).

"[A] federal court may adjudicate a case only if there is *both* constitutional and statutory authority for federal jurisdiction." Erwin Chemerinsky, Federal Jurisdiction § 5.1 (Sixth ed. 2012). "Constitutional authority derives from Article III of the Constitution, which provides for federal judicial power over nine categories of 'cases' and 'controversies'" including, of relevance here, the power to decide all cases arising under the laws of the United States. *Id.* Statutory authority for federal jurisdiction derives from Congress, which is vested with the power to determine the jurisdiction of federal district courts. *Id.* "Many federal statutes concerning specific topics contain provisions allowing federal court subject matter jurisdiction over matters arising under them." *Id.* Others are quite broad, including for example and of particular relevance here, 28 U.S.C. Section 1331, in which Congress granted federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Chemerinsky, *supra*, §5.1.

Defendants' Motion raises issues implicating both Constitutional and statutory jurisdiction over this matter. Because Plaintiff's subject-matter jurisdiction argument presents a "facial attack," the Court accepts the allegations in Plaintiff's Complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (A facial attack challenges the sufficiency of the allegations in the complaint relating to subject-matter jurisdiction.).

## B. Defendants' Statutory Subject-Matter Jurisdiction Argument

Defendants argue that because none of the statutes upon which Plaintiff's claims rely provide for a cause of action against the United States, these "claims are cognizable, if at all, pursuant to the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. Sections 701-706." (Doc. 14 at 11.) This argument raises an issue concerning the statutory basis of the Court's subject-matter jurisdiction over Plaintiff's claims.

The APA waives the United States' sovereign immunity by permitting claims for *injunctive* relief against the federal government in circumstances where "an agency or an officer or employee [of the United States] acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C.A. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."); *see* Chemerinsky, *supra*, § 9.2.1 (explaining that the APA, which permits the federal government to be sued for injunctive relief, is one of three major statutes that waives the United States' sovereign immunity). To that end, the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.A. § 702. And it provides the standards that govern the Court's review of agency actions. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573 (10th Cir. 1994) ("Judicial review of both formal and informal agency action is governed by § 706 of the APA, which provides that a 'reviewing court shall . . . hold unlawful and set aside agency action findings and conclusions found' not to meet six separate standards.").

Importantly, however, "the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions." *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Instead, the issue of the Court's subject matter jurisdiction to review an agency action is governed by 28 U.S.C. Section 1331. *Califano*, 430 U.S. at 106-07; Chemerinsky, *supra*, § 9.2.2 (Section 702 "is a major exception to the doctrine of sovereign immunity because it allows the judiciary, *assuming all other jurisdictional requirements are met*, to halt illegal government conduct." (emphasis added)). As noted earlier, 28 U.S.C. Section 1331 provides that the Court has subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Jurisdiction under [Section] 1331 exists only where there is a colorable claim *arising under* federal law." *McKenzie v. U.S. Citizenship & Immigration Servs., Dist. Dir.*, 761 F.3d 1149, 1156 (10th Cir. 2014) (emphasis added) (quotation marks omitted). In the statutory context, a case "arises under" federal law "when a federal [statute] creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Thus, in determining whether the Court has subject-matter jurisdiction over a claim, the Court must consider whether Congress created the right of action that the plaintiff is pursuing. *Id.*; *see Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

In undertaking this analysis, the Court must consider "whether the cause of action alleged is *so patently without merit* as to justify the court's dismissal for want of jurisdiction." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 70 (1978) (alteration omitted). This is so because "a court may dismiss for lack of subject-matter jurisdiction when [a] claim is so insubstantial, implausible, foreclosed by prior decisions. . . , or otherwise completely devoid of merit as not to involve a federal controversy[.]" *McKenzie*, 761 F.3d at 1156–57.

With these principles in mind, the Court considers Plaintiff's First and Second Causes of Action.

### C. **Plaintiff's First and Second Causes of Action Should Be Dismissed for Lack of Statutory Subject Matter Jurisdiction**

Plaintiff's First and Second Causes of Action are premised on 47 U.S.C. Section 253 and 47 U.S.C. Section 332(c)(7)(B), respectively. (Doc. 1 at 6-11.) In relevant part, Section 253 provides as follows:

> **(a) In general**
>
> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>
> . . .
>
> **(b) State and local government authority**
>
> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

Relying on the foregoing provisions of Section 253, Plaintiff alleges in its First Cause of Action that "Defendants denial of Plaintiff's request prohibits or has the effect of prohibiting the ability of Plaintiff to provide telecommunications service as Plaintiff is forced to lease space from a competitor at a rate that is excessive and prohibitive." (Doc. 1 at 7.) In support of this theory, Plaintiff alleges that the fees that TRC charges for access to Tesuque Peak (which TRC increases annually) are cost prohibitive and that, "[b]y denying Plaintiff's request and forcing Plaintiff to lease space from TRC as the only alternative to access, Defendants effectively prohibit Plaintiff from providing service." (Doc. 1 at 7-8.) Additionally, Plaintiff alleges that by denying its request Defendants deprive the Santa Fe National Forest of additional rental income

and allow TRC to monopolize the site. (Doc. 1 at 7-8.) Further, apparently invoking the APA standard of review, Plaintiff alleges that "[b]y requiring Plaintiff to lease space from TRC as the only alternative for access, Defendant[s] ha[ve] failed to consider all alternatives rendering the basis of their decision arbitrary, capricious or an abuse of discretion." (Doc. 1 at 7.) *See* 5 U.S.C. § 706(2)(A) (requiring a reviewing court to hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law).

Plaintiff's First Cause of Action does not involve a federal controversy. By its plain terms, and considered in context,[2] Section 253 does not give rise to a cause of action against the Forest Service or its officers such that Plaintiff's claim may be construed as "arising from" that law. *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (stating that if the language of a statute is plain, it must be enforced according to its terms; and in deciding whether language is plain, the words must be read in their context and with a view to their place in the overall statutory scheme). Section 253 applies exclusively to States and localities which, pursuant to Subsection (a), are forbidden from establishing a regulation or requirement that effectively prohibits an entity from providing telecommunications services; and which, pursuant to Subsection (b), are unimpeded in their authority to manage public rights of way. The Forest Service is indisputably an agency of the federal government as distinct from a state or locality. The Department of Agriculture—within which the Forest Service is subsumed—has authority over rights of way within National Forest System land. 43 U.S.C. § 1761(a). Section 253 imposes no obligations or prohibitions on the Forest Service. Plainly, the Forest Service's conduct and that undertaken by its officers is not within the purview of Section 253. Plaintiff's argument that the Forest

---

[2] In its entirety, Section 253 governs states and localities, and does not purport to apply to the United States Government or any of its agencies.

Service is essentially a state or locality because the Federal Communications Commission has "general authority to administer the Communications Act" is legally unsupported and rationally unfounded. (Doc. 17 at 8-9.) Because the Forest Service has no duties or obligations under Section 253, Plaintiff's claim against Defendants for a purported violation of that law are so lacking in merit as to justify dismissal of Plaintiff's First Cause of Action for lack of jurisdiction. *Duke Power Co.*, 438 U.S. at 70.

Plaintiff's Second Cause of Action is brought pursuant to 47 U.S.C. Section 332(c)(7)(B)(i), which provides:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any *State or local government or instrumentality thereof--*
> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(Emphasis added).

Plaintiff claims that Defendants violated 47 U.S.C. Section 332(c)(7)(B) by allowing certain federal and local agencies to access and build towers on Tesuque Peak without requiring these agencies to use TRC's facility while depriving Plaintiff of the same opportunity. (Doc. 1 at 9.) This, Plaintiff alleges, constitutes discrimination among service providers in contravention of Section 332(c)(7)(B)(i)(I). (Doc. 1 at 9.) Plaintiff also alleges that "Defendants further discriminate against Plaintiff in their requirements that '[n]ew infrastructure would require formal establishment of a new communications site, situated some distance from the existing site to minimize interference, competition, and visual quality issues' and require 'new environmental analysis and a Forest Plan amendment.'" (Id.) Elaborating on that allegation, Plaintiff alleges further that "Defendants have allowed multiple towers at the site situated with in (sic) the

existing site proximity." (Id.) Plaintiff also alleges, in summary, that Defendants failed to consider several factors pertaining to Plaintiff's request and, as a result, Defendants' decision is not only discriminatory, but also "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or with required procedure. (Doc. 1 at 10-11.)

The excerpted portion of Section 332 set forth above is part of a broader statute governing the general provisions of the Federal Communications Commission's management of the spectrum available for use by private mobile services. 47 U.S.C. § 332(a). The provisions of Section 332 upon which Plaintiff relies for its Second Cause of Action apply to state and local governments. Neither those provisions nor any other provision in the statute govern the Forest Service or its officials. Because Section 332(c)(7)(B)(i) does not apply to the Forest Service, and for the same reasons discussed in regard to Plaintiff's First Cause of Action, Plaintiff's Second Cause of Action should be dismissed for lack of jurisdiction. *Duke Power Co.*, 438 U.S. at 70.

### D. **Plaintiff's Third Cause of Action Should Be Dismissed for Lack of Subject-Matter Jurisdiction Under Article III of the Constitution**

Defendants argue that Plaintiff lacks standing to bring the challenge raised in its Third Cause of Action. (Doc. 14 at 19.) Article III of the United States Constitution limits this Court's jurisdiction to certain "cases" or "controversies." The requirement of "standing," which derives from that requirement is an "irreducible constitutional" limitation on the subject-matter jurisdiction of federal district courts. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). Standing requires

> (1) that the plaintiff have suffered an 'injury in fact'—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* Self-inflicted harms stemming from a plaintiff's own choices do not constitute "injury" for the purposes of the Article III standing requirement. *Nat'l Treasury Emps. Union v. U.S.*, 101 F.3d 1423, 1429 (D.C. Cir. 1996); *see Pa. v. N.J.*, 426 U.S. 660, 664 (1976) (holding, in the context of a lawsuit between two States, that self-inflicted injuries to the plaintiff States arising from decisions by their respective legislatures did not give rise to standing to sue the Defendant States because "[n]o State can be heard to complain about damage inflicted by its own hand"). "Furthermore, even if self-inflicted harm qualified as an injury" such harm, by its very nature, cannot be said to be "fairly traceable to the defendants' challenged conduct." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (holding that self-inflicted harm that could be alleviated by the plaintiff does not qualify as an "injury" sufficient to satisfy the basic requirements for standing).

In its Third Cause of Action, Plaintiff claims that Defendants violated 47 U.S.C. Section 1455(b). Section 1455 governs the deployment of wireless facilities. It provides, in relevant part:

> **(b) Federal easements, rights-of-way, and leases**
>
> **(1) Grant**
>
> If an executive agency, a State, a political subdivision or agency of a State, or a person, firm, or organization applies for the grant of an easement, right-of-way, or lease to, in, over, or on a building or other property owned by the Federal Government for the right to install, construct, modify, or maintain a communications facility installation, the executive agency having control of the building or other property may grant to the applicant, on behalf of the Federal Government, subject to paragraph (3), an easement, right-of-way, or lease to perform such installation, construction, modification, or maintenance.
>
> **(2) Application**

> **(A) In general**
>
> The Administrator of General Services shall develop a common form for applications for easements, rights-of-way, and leases under paragraph (1) for all executive agencies that, except as provided in subparagraph (B), shall be used by all executive agencies and applicants with respect to the buildings or other property of each such agency.

47 U.S.C. § 1455.

Plaintiff's claim is centered upon the "common form" referenced in Section 1455(b)(2)(A). (Doc. 1 at 12.) Plaintiff alleges (and the Forest Service concedes) that Standard Form 299 (SF-299) was developed by federal agencies—including the Forest Service for the authorization of use or occupancy of federal lands. (Doc. 1 at 12; Doc. 14 at 17.) Here, Plaintiff did not submit a SF-299; instead, Plaintiff submitted a letter to the Forest Service requesting authorization to place new telecommunications facilities on Tesuque Peak. (Doc. 1 at 4; Doc. 1-1 at 2.) Plaintiff alleges that the Forest Service violated Section 1455(b)(2)(A) by denying its request without first requesting that Plaintiff submit its application using SF-299. (Doc. 1 at 12; Doc. 17 at 15-16.)

As to the issue of standing, Defendants argue that any injury allegedly suffered by Plaintiff as a result of its having not submitted a SF-299 was self-inflicted and cannot fairly be traced to the Forest Service (which is not statutorily mandated to request that an applicant submit SF-299) having not requested that Plaintiff submit that form in lieu of its letter. (Doc. 14 at 18, 21-25.) Defendants note that Plaintiff has not alleged that Plaintiff was barred from submitting a SF-299, and they argue further that Plaintiff could, even now, submit the form on its own accord. (Doc. 14 at 22-24.) Thus, Defendants argue, not only is the alleged harm self-inflicted, but it is redressable without judicial intervention. (Doc. 14 at 24.) Neither Plaintiff's allegations nor the

arguments that Plaintiff submitted in response to Defendants' Motion to Dismiss demonstrate otherwise. (See Doc. 17 at 10-12.)

While Section 1455 requires executive agencies and applicants for easements, rights of way, and leases to use a standard form, Plaintiff does not allege or argue, nor does the record reveal that Plaintiff ever was or presently is prohibited from submitting a SF-299 in its effort to gain the Forest Service's permission to place new telecommunications facilities on Tesuque Peak. Plaintiff chose to submit its request via letter instead of using SF-299. This was a choice that, insofar as the record in this case reveals, Plaintiff made of its own accord. To the extent that Plaintiff was "injured" as a result of its request having not been processed via the SF-299 the harm was caused by Plaintiff's decision to submit a letter in lieu of a SF-299 and not by the Forest Service's allegedly wrongful conduct. As such the resulting "harm" does not give rise to Article III standing. *Nat'l Treasury Emps. Union*, 101 F.3d at 1429 (Self-inflicted harms stemming from the plaintiff's own choices do not constitute "injury" for the purposes of Article III standing). To the extent that Plaintiff seeks an order from this Court requiring that the Forest Service process its request using the SF-299, Plaintiff may accomplish this end without judicial intervention by submitting a SF-299. (Doc. 17 at 16) That Plaintiff has chosen not to do so, and has allegedly been injured as a result, is a consequence of Plaintiff's own conduct that cannot fairly be traced to a wrongful act of the Forest Service or its officers. *See Nat'l Family planning & Reprod. Health Ass'n, Inc.*, 468 F.3d at 831 (holding that where a plaintiff "has within its grasp an easy means for alleviating" an alleged injury, but has failed to do so and has, instead, "*chosen* to remain in the lurch" the plaintiff "cannot demonstrate an injury sufficient to confer standing"). Because Plaintiff has not established standing to pursue its Third Cause of Action, that claim should be dismissed for lack of subject-matter jurisdiction.

### III. Conclusion

For the foregoing reasons, I recommend that *Federal Defendants' Motion to Dismiss and Memorandum in Support* (Doc. 14), filed December 22, 2017, be **GRANTED** on the ground that the Court lacks subject-matter jurisdiction over Plaintiff's claims.

*Kirtan Khalsa*

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**